UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASLAM CYCLEWALA, *also known as Javed Khan*,

        Petitioner,

   v.

THOMAS E. FEELEY, *et al.*,

        Respondents.

**DECISION AND ORDER**

6:20-CV-06678 EAW

---

# INTRODUCTION

Petitioner Aslam Cyclewala a/k/a Javed Khan ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his continued detention pending removal violates his right to due process. (*Id.*). For the reasons that follow, the Court denies the petition.

# BACKGROUND

**I.    Factual Background**

Petitioner is a native and citizen of India. (Dkt. 5-1 at ¶ 5). He entered the United States in 1986 using a non-immigrant visa and a "photo-substituted passport"—that is, "a valid passport which has had the photograph altered such that the person depicted is not the true passport holder." (*Id.* at ¶ 5 & n.2). On April 29, 1988, Petitioner filed an application for temporary resident status with the former Immigration and Naturalization

- 1 -

Service ("INS") under the name "Javed Khan."  (*Id.* at ¶ 6).  On July 21, 1989, INS informed Petitioner by letter that it required further information in order to process his application.  (*Id.*).  On December 12, 1989, INS informed Petitioner by letter that his application had been denied because he had failed to assist INS in verifying the information necessary to decide his application and had failed to establish his eligibility for temporary resident status.  (*Id.* at ¶ 7).

On February 13, 1991, under the name "Javed Khan," Petitioner was convicted of murder in the second degree, kidnapping in the second degree, robbery in the first degree, and possession of a weapon in the second degree.  (*Id.* at ¶ 8).

INS agents met with Petitioner on April 3, 1991, at the Downstate Correctional Facility, where he was in criminal custody.  (*Id.* at ¶ 9).  Documents from this encounter show the name "Javed Khan" listed first, but then crossed out and replaced with "Aslam Cyclewala."  (*Id.*).  Petitioner told the INS agents that he had entered the United States on April 27, 1987, on a B-2 Visitor visa.  (*Id.*).  He further stated that his father was a citizen of India named Ismail Cyclewala and that his mother, who was living in New York at the time, was a citizen of Pakistan named Annisa Hassan.  (*Id.*).  Petitioner further claimed to have obtained temporary resident status from the INS in 1989.  (*Id.*).  The statement completed by Petitioner at this encounter is signed "Javed Khan."  (*Id.*).

On September 28, 1994, Petitioner signed an affidavit claiming that his true and correct name was "Javed Ismail Khan."  (*Id.* at ¶ 10).  Petitioner stated that he had used a passport with the name "Cyclewala" on it to enter the United States in 1986.  (*Id.*).  Petitioner further stated that: his father's name was Ismail Khan, not Ismail Cyclewala; his

- 2 -

mother's name was Gulshan Khan, not Annisa Hassan; his mother was a citizen of India, not Pakistan; and neither of his parents had lived in the United States. (*Id.*).

On December 8, 1994, Petitioner was issued an Order to Show Cause and Notice of Hearing charging him with being subject to deportation pursuant to various provisions of the Immigration and Naturalization Act ("INA"). (*Id.* at ¶ 11). An immigration judge ("IJ") ordered Petitioner removed from the United States on May 15, 1995; Petitioner waived appeal of the order, rendering it final. (*Id.* at ¶ 14).

In September 2016, the New York State Board of Parole granted Petitioner conditional parole for deportation only ("CPDO"). (Dkt. 6-1 at 1). On October 17, 2016, an individual representing himself to be Petitioner's maternal uncle signed an affidavit stating that Petitioner's name is Aslam Ismail Cyclewala, that he was born in India in 1969, that his father's name is Ismail Ibrahim Cyclewala, and that his mother's name is Gulshan Ismail Cyclewala. (Dkt. 5-2 at 40). It is unclear from the record before the Court when this affidavit was provided to Immigrations and Customs Enforcement ("ICE"). On November 22, 2016, while Petitioner was still in criminal custody, ICE sent a request for travel documents for Petitioner, under the name "Javed Khan," to the Consulate of India. (Dkt. 5-1 at ¶ 15).

At some point in late 2016 or early 2017, Petitioner provided ICE with a copy of his purported birth certificate from India. (Dkt. 6-1 at 2; Dkt. 6-2). On January 27, 2017, Petitioner sent a letter to the Consulate of India in support of the request for travel documents. (Dkt. 6-3 at 1). Petitioner signed the letter "Javed Khan" but stated therein that he came to the United States in 1986 under the name "Aslam Ismail Cyclewala." (*Id.*).

- 3 -

In January 2019, ICE reached out to Petitioner's attorney seeking additional documentation to support a request for travel documents from India, but received no response. (Dkt. 5-1 at ¶ 16).

In July 2019, the Consulate of India informed ICE that it needed additional information to verify Petitioner's identity. (*Id.* at ¶ 17). At that time, the request was still under the name of "Javed Khan." (*Id.*).

A renewed request for travel documents was resubmitted to the Consulate of India in October 2019. (*Id.* at ¶ 18). ICE provided fingerprints in connection with this request. (*Id.*). In January 2020, the Consulate of India requested additional information. (*Id.* at ¶ 19). ICE contacted Petitioner's wife seeking additional information, but she was unable to provide any. (*Id.*).

On February 11, 2020, Petitioner was released from custody by the New York State Department of Corrections and Community Supervision and taken into ICE custody. (*Id.* at ¶ 20). After arriving at the BFDF, Petitioner was interviewed. (*Id.* at ¶ 21). Petitioner stated that his true name was "Aslam Ismail Cyclewala." (*Id.*). On February 19, 2020, ICE sent another request for a travel document to the Consulate of India, this time under the name "Cyclewala." (*Id.* at ¶ 22).

In June 2020, the Consulate of India informed ICE that some of the information provided by Petitioner was false and requested corrected information. (*Id.* at ¶ 25). ICE provided updated information and additional documentation to the Consulate. (*Id.*).

Petitioner was interviewed in connection with the request for travel documents on August 4, 2020. (*Id*. at ¶ 26). In September 2020, the Consulate requested additional information, which ICE provided. (*Id*. at ¶ 28).

On or about September 21, 2020, Petitioner was sent by plane to Alexandria, Louisiana, for a flight to India. (Dkt. 7 at ¶ 9). However, ICE did not obtain the necessary travel documents in time for that flight, and Petitioner, after being moved first to Monroe, Louisiana, and then Alvarado, Texas, was returned to the BFDF in December 2020. (*Id*. at ¶¶ 9-10, 12-13, 16-19). Petitioner was advised that as of December 21, 2020, the Consulate of India had been unable to verify his identity, and that he would be provided with ongoing updates. (*Id*. at ¶ 21).

## II. Procedural Background

Petitioner filed his petition on September 4, 2020. (Dkt. 1). Respondents filed their answer and return in response to the petition on October 23, 2020. (Dkt. 5). Petitioner filed his reply on November 13, 2020. (Dkt. 6). Petitioner filed a supplemental declaration on January 18, 2021. (Dkt. 7).

## DISCUSSION

## I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality

of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.     Legal framework

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*.

In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months

following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

### III. The Removal Period has been Extended

As set forth above, by statute, "when an alien is ordered removed," the government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. *Id.* § 1231(a)(1)(B).

Further, the removal period is extended, and detention continues to be authorized, "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). Generally, where the Department of Homeland Security ("DHS") determines that the removal period has been extended pursuant to § 1231(a)(1)(C), it is required to "[s]erve the alien with a Notice of Failure to Comply" that explains the relevant statutes and provides "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." 8 C.F.R. § 241.4(g)(5)(ii). However, "[t]he fact that the Service does not provide a Notice of Failure to Comply, within the 90–day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect

of excusing the alien's conduct." *Id.* § 241.4(g)(5)(iv); *see also de Souza Neto v. Smith*, No. CV 17-11979-RGS, 2017 WL 6337464, at *1 & n.1 (D. Mass. Oct. 16, 2017) (finding removal period extended pursuant to § 1231(a)(1)(C) notwithstanding ICE's failure to serve Notice of Failure to Comply).

Here, under § 1231(a)(1)(b), the removal period began on February 11, 2020, when Petitioner was released from state criminal custody.[1]  However, Respondents argue that the removal period has been extended in this case pursuant to § 1231(a)(1)(C), "due to Petitioner's actions of providing false, and even contradictory, information to immigration officials attempting to remove him, thereby conspiring or acting to prevent his removal." (Dkt. 5-3 at 11).  Petitioner denies that he has acted to prevent his removal, contending that he supplied his birth certificate and school records to ICE in 2017 in an effort to aid in his deportation.  (Dkt. 7 at ¶ 15).

As explained in *Jiang v. Holder*, No. 15-CV-48-JTC, 2015 WL 3649739 (W.D.N.Y. June 11, 2015):

> In considering whether aliens have satisfied their obligations under § 1231(a)(1)(C), courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the [DHS] with requested documents.

---

[1] The Board of Parole's grant of CPDO does not constitute release for purposes of the statute.  *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004) ("[T]he mere grant of a CPDO is not a 'release' from state custody under the INA.").

*Id*. at *4 (citation omitted and alteration in original); *see also Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 501 (S.D.N.Y. 2009) ("[C]ourts have . . . tolled the removal period in cases where the alien has demonstrated some sort of bad faith failure to cooperate, such as providing the INS with false or inconsistent information regarding his identity or country of origin, or refusing to complete travel arrangements or name a country for deportation.").

In this case, the evidence as to whether Petitioner's removal period has been extended pursuant to § 1231(a)(1)(C) is somewhat mixed. There is no indication in the record before the Court that DHS ever served Petitioner with a Notice of Failure to Comply. While that fact does not prohibit a finding that the removal period has been extended under § 1231(a)(1)(C), it certainly suggests that DHS did not view Petitioner as uncooperative. Further, Petitioner plainly has taken some steps to assist in effectuating his removal, including providing documents and sitting for an interview.

On the other hand, it is clear that the present difficulty in verifying Petitioner's identity and thus obtaining travel documents is a direct consequence of Petitioner's own actions, starting with the presentation of an altered passport in 1986 and continuing with the repeated presentation of conflicting and false information to first INS and then ICE. For example, while Petitioner makes much of the fact that he provided a copy of what he claims is his birth certificate in the name of "Aslam Cyclewala" in 2017, he was still at that point representing that his name was "Javed Khan." (*See* Dkt. 6-1 at 2). Further, the Consulate of India has indicated that the information provided by Petitioner was false as recently as June 2020. (Dkt. 5-1 at ¶ 25). Indeed, DHS is not at this point certain as to whether "Aslam Cyclewala" or "Javed Khan" is Petitioner's true name. (*Id*. at ¶ 2 and n.1).

Having considered all the evidence of record, the Court concludes that § 1231(a)(1)(C) applies under these circumstances to extend the removal period. Even accepting Petitioner's claim that the most recent documentation and information he has provided is accurate, the delay required to verify his representations is the result of his own prior misleading conduct. *See Leslie v. Herrion*, 677 F. Supp. 2d 651, 653 (W.D.N.Y. 2010) (where ICE was unable to obtain travel document from Jamaica because the petitioner falsely claimed to be a United States citizen, "respondent is entitled to judgment since it is clear that [the petitioner's] continued detention is of his own making")

*Brown v. Barr*, No. 18-CV-6841-FPG, 2019 WL 4303352 (W.D.N.Y. Sept. 11, 2019), *appeal dismissed sub nom. Brown v. McAleenan*, No. 19-3070, 2020 WL 1488166 (2d Cir. Jan. 15, 2020), supports the Court's conclusion. In *Brown*, the petitioner had produced a birth certificate from the United States Virgin Islands and had claimed to be a United States citizen. *Id.* at 1. However, the birth certificate was found to be fraudulent. *Id.* at *1-2. The court found the removal period extended under § 1231(a)(1)(C) notwithstanding the fact that the petitioner had participated in two telephone interviews with the Jamaican embassy and provided a written statement. *Id.* at *3. While *Brown* is not directly on point, it is consistent with the Court's conclusion that Petitioner's procedural participation in the removal process does not override his provision of false information.

On these facts, the Court finds that Petitioner has engaged in "acts to prevent [his] removal" sufficient to extend the removal period under § 1231(a)(1)(C). That Petitioner now claims to have provided complete and accurate information does not unring the bell

of his prior fraud, nor obviate the need for ICE and the Consulate of India to take all steps necessary to verify his identity in order to effectuate his removal. Accordingly, Petitioner's statutory removal period has not expired and he is still appropriately detained.

### C. Petitioner Has not Borne his Initial Burden

The Court further finds that, even assuming the removal period and the six-month presumptively reasonably period of detention under *Zadvydas* have expired, Petitioner has not established his entitlement to relief. As noted above, Petitioner bears the initial burden to demonstrate there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future. *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee"). Petitioner has not met this standard here. While there have undoubtedly been delays in obtaining travel documents for Petitioner, as discussed above, those delays have been the result of the conflicting and false information repeatedly provided by Petitioner. "[W]hen an alien refuses to cooperate <u>fully and honestly</u> with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (emphasis added); *see also Brown*, 2019 WL 4303352, at *3 ("Petitioner has not met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. It appears that Petitioner is the main cause for the delay in the execution of the removal order, and once he provides accurate and complete information, it is likely that he can and will be removed."). On the record before the Court, there is no reason to conclude that Petitioner cannot be

successfully removed to India in relatively short order if, as he claims, DHS and the Consulate of India are now in possession of full, complete, and accurate information regarding his identity. Accordingly, Petitioner is not entitled to habeas corpus relief.

## **CONCLUSION**

For the foregoing reasons, the Court denies the petition. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   January 29, 2021
         Rochester, New York